**SCHLEIER LAW OFFICES, PC**
3101 N. Central Avenue
Suite 1090
Phoenix, Arizona 85012
Telephone: (602) 277-0157
Facsimile: (602) 230-9250

TOD F. SCHLEIER, ESQ.  #004612
Email: tod@schleierlaw.com
BRADLEY H. SCHLEIER, ESQ.  #011696
Email: brad@schleierlaw.com
Attorneys for Plaintiff Cassaundra King

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Cassaundra King, | Case No. |
| Plaintiff, | |
| v. | **COMPLAINT** |
| CAE, Inc., a foreign corporation; CAE Global Training Academy, Inc., an Arizona corporation dba Sabena Airline Training Center, | **(Jury Trial Demanded)** |
| Defendants | |

Plaintiff, by and through counsel, for her Complaint, alleges as follows:

**PARTIES, JURISDICTION AND VENUE**

1.  This action is brought to remedy discrimination on the basis of sex in the terms, conditions and privileges of employment and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000 *et. seq.* ("Title VII").

2.  Plaintiff is a single person who resides in Maricopa County, Arizona.

1

3. Defendant CAE, Inc. is a foreign corporation, doing business in Maricopa County, Arizona through Defendant CAE Global Training Academy, Inc. Defendant CAE, Inc. is a leader in modeling, simulation and training for civil aviation and defense. The company employs more than 7,500 employees at more than 100 sites and training locations in over 25 countries. Defendant CAE Global Training Academy, Inc. is an Arizona corporation doing business as Sabena Airline Training Center. Defendants CAE, Inc. and CAE Global Training Academy, Inc. are Plaintiff's joint employers and an integrated enterprise pursuant to Title VII of the Civil Rights Act and are each directly liable and responsible for the discrimination perpetrated upon Plaintiff because acting through their agents each directly participated in the discrimination complained of herein. In addition, upon information and belief, Defendant CAE, Inc. exerts substantially total control and influence over the management and activities of Defendant CAE Global Training Academy, Inc. and CAE, Inc.'s Human Resources Representatives were involved in the acts and events hereinafter described and told Plaintiff she was a CAE employee.

4. All acts and events alleged herein occurred in the State of Arizona.

5. Plaintiff filed a charge of sex discrimination and retaliation against Defendants with the Equal Employment Opportunity Commission [hereinafter "EEOC"] on or about January 18, 2012. Plaintiff filed a second charge of retaliation against Defendants with the EEOC on February 14, 2012.

6. On February 15, 2012, the EEOC issued a Notice of Right to Sue to Plaintiff for her first charge of discrimination and retaliation. On February 22, 2012, the EEOC issued a Notice of Right to Sue to Plaintiff for her second charge of retaliation.

7. Plaintiff has complied fully with all prerequisites for jurisdiction in this Court under Title VII. This Court has jurisdiction under §706(f)(3) of Title VII, 42 U.S.C. § 20003-5(f)(3). Plaintiff's Third Claim is so related to the Plaintiff's First and Second Claim that all claims form part of the same case or controversy under Article III of the United States Constitution and this Court has supplemental jurisdiction over said claim based on 28 U.S.C. §1367(a).

8. Venue is properly laid in this Court pursuant to 28 U.S.C. § 1391.

## FACTUAL BACKGROUND

9. Plaintiff realleges the allegations of Paragraphs 1-8 as if fully set forth herein.

10. Plaintiff was employed by Defendants as a JAA Flight Instructor on January 11, 2010. Beginning in August 2011, Wim Schroder, the Center Director and the person in charge of Respondent's Mesa facility, made inappropriate sexual advances toward Plaintiff, tried to grab and kiss her, smacked her rear end, tried to fondle her breast, repeatedly propositioned her, and repeatedly stalked her at her home, sitting in his car outside for hours.

11. In September 2011, while Plaintiff was working with another manager in the workplace, Kyle Portella, manager of the Vietnam Airlines program, Plaintiff's cell phone kept beeping, indicating she was receiving text messages. Plaintiff muttered: "Leave me alone." Portella asked her if a guy was bugging her and she told him it was Schroder who was constantly texting her, driving her crazy and would not leave her alone. Portella reports directly to Jerod Bybee, who was the Chief Flight Instructor. The

following day, Schroder called Plaintiff into his office and said: "Well, Jerod told me you are telling people I am texting you all the time."  As Chief Flight Instructor, Bybee did nothing to investigate or report Schroder's conduct.

12. Plaintiff has retained text messages sent to her which document the creation of a hostile work environment by Schroder.  On September 23, 2011 at 10:31 p.m., Schroder sent Plaintiff the following text message: "Last message today.  Just want to let you know how much I love you and miss you…..sorry but these are my feelings for you….you have such a wonderful hart [sic]."

13. On September 26, 2011 at 9:30 p.m., Schroder sent Plaintiff the following text message:  "When I tell you that I love that is because I like everything about you.  Sorry for pushing but please do understand how much I miss intimacy….."  On September 27, 2011 at 8:23 p.m., Schroeder sent Plaintiff the following  text message: "I am here and be happy that someone really cares about you….."  At 8:24 p.m., Plaintiff responded:  "Please go home."  At 8:27, Schroder responded: "I care about you and I am not going home…..I can stay waiting here the whole night….."  Again, at 8:56, Schroder wrote:  "You can trust me and don't have to feel trapped…..I am a good friend….since I was only waiting here in case you changed your mind so I could talk."  At 8:59, Schroder wrote: "I love you Sandy and I am going home now…..good night and please try to get some good sleep….tomorrow will be a new and better day."  On that same evening, at 9:00 p.m., after having received additional text messages from Schroder, Plaintiff wrote: "No.  I asked for space.  Im OFF work and cant get any peace.  What are you doing? This isn't normal jesus im not your toy not please leave me in peace."  At 9:12, Schroder

4

responded: "Don't worry I am gone….your no longer in a prison…good night and see you tomorrow."

14. On September 28, 2011, Plaintiff sent Schroder the following text message at 7:04 a.m.: "Its not normal what you did last night. I felt like a hunted animal." At 8:40 a.m., Plaintiff sent Schroder the following text message: "You violated trust last night and freaked me out. I don't know why you think you can push me around and that its ok, but when I ask for what is fair and right I am unreasonable. No one else has to fight o get paid. Just me. How fair is that? Why don't you just fire me and get it over."

15. On that same day, at 2:18 p.m., Schroder wrote to Plaintiff: "You want to know the latest rumor….you may only guess once…Emily just informed me…" This was followed by another text from Schroder at 3:04 p.m.: "So the rumor is that we have an affair…which we don't…that double sucks…"

16. Plaintiff rejected Schroder's advances and repeatedly requested him to stop stalking her. Schroder also tied the submission to his advances to the terms and conditions of her employment, including her salary.

17. On November 3, 2011, Plaintiff reported to work and found a meeting in progress between Ana Hocking, Human Resources Representative, Bybee and Schroder. Plaintiff was later told that the meeting was called for Schroder to explain why he showed favoritism to Plaintiff.

18. During Plaintiff's performance review with her supervisor Jerod Bybee on November 18, 2011, Bybee asked Plaintiff what was going on between her and Schroder. Plaintiff assured him there was no affair going on between them. Bybee said that because

5

of Plaintiff and the current situation with Schroder, that neither he nor her colleagues want to come to work. Bybee asked Plaintiff why she will not trust him. Feeling pressured and already at a breaking point, Plaintiff told Bybee that she would tell him on the condition that he hold her information confidential and not say anything so she could get her medical certificate back and find another job. Bybee promised he would and Plaintiff told him that about Schroder's advances, his stalking her and she said she could prove it. Plaintiff could tell Bybee did not believe her, so she told him that she would forward a few of the texts to prove it, which she did.

19.     The following day, Bybee called Plaintiff and told her that he was sorry, that "this was too big" and that he had called Human Resources Headquarters. Bybee said Plaintiff had to speak to Karl Herrick, employed by Defendant CAE, and gave her his phone number.

20.     On November 18, 2011, Plaintiff called Karl Herrick. He conducted a short interview and wanted to know if Plaintiff had any sexual or intimate relations with Schroder. Plaintiff told that she had not had relations with Schroder other than he constantly attempted to touch her, hug her and kiss her at work and stalked her.

21.     After Plaintiff reported Schroder's conduct, Defendant requested that she stay at a hotel for her own protection and Schroder was subsequently terminated.

22.     Defendant then began to retaliate against Plaintiff after she made her internal report by reassigning her to a desk job from her position in which she was scheduled to give ground instruction as part of the MCC Training until May 2012 which resulted in a decrease in pay, by forcing her to move from a company-provided apartment

6

she had just moved into in October 2011, by putting her on a three week paid "holiday" leave, by taking away the office where she worked and then offering her an Employment Separation Agreement, Waiver and Release on January 9, 2012.

23. On January 18, 2012, Plaintiff filed a charge of sex discrimination and retaliation against Defendants with the Equal Employment Opportunity Commission, Charge No. 540-2012-00929. Since that time, Defendants have continued to retaliate against her.

24. On February 2, 2012, Plaintiff was summoned to meet with Jerod Bybee, Jack David and Ana Hocking to discuss her employment. Plaintiff was told that she would be put back in flight training and assigned an instructor. She was assigned Amelia Schindler, a brand new Instructor who is at the training facility on her first job, whereas Plaintiff has thousands of hours of flight time. Jerod Bybee began to explain that since Plaintiff had not been flying (due to a motorcycle accident in mid-2011), she needed new training. After that training, Plaintiff would have a flight check with either Bybee or his assistant. Upon a successful check flight, Plaintiff could return to flight duty and receive flight pay.

25. Bybee started to complain that Plaintiff had been employed without a medical certificate for 7 months. Plaintiff responded that as the MCC coordinator she was not required to have a medical certificate, and that she was removed from that program without any explanation or reason. Bybee then said that the job was finished, and that they could discuss that matter at another time. Then Jack David said: "Your medical is valid until July 31." Plaintiff explained that she had to update it every 6

7

months for a year, then she was back to once a year.  Jack David said, "You lost your medical because you are a substance abuser, which we found out through the proper FAA channels."  Bybee then smiled at Plaintiff.  She was so shocked she didn't say anything.  Then Jack David said, "You will submit to a drug screen this afternoon, and we have a driver to take you."  Plaintiff was asked if she had any other questions concerning the meeting, she stood up and said "No, who is driving me, we can go right now."

26. Plaintiff's ID was in her car, and the van driver told her that he was sorry, but that he had to walk her to her car because Jack David told him not to let Plaintiff out of his sight until after the drug test was complete.

27. Plaintiff performed the drug test, went home and called Dr. Josef Pursch, her flight surgeon, and told him what happened.  He told Plaintiff that the only way her employer could have gotten any of her medical records was to pay off someone from the FAA, as he and the FAA are the only entities that have Plaintiff's medical records.  He said that in all the time he has been a doctor for the FAA he has never seen this happen, and that it is clearly a gross act of privacy invasion and completely illegal.

28. On February 14, 2012, Plaintiff was again summoned into a meeting.  She was asked whether she had threatened Jerod Bybee and his family.  Plaintiff denied ever threatening them and did not know anything about his family.  Plaintiff was then fired and escorted off the premises.

/ / /

/ / /

## COUNT ONE

**(Violation of Title VII - Sexual Harassment)**

29. Plaintiff realleges the allegations of Paragraphs 1-28 as if fully set forth herein.

30. Defendants have discriminated against Plaintiff in the terms and conditions of her employment on the basis of her sex in violation of Title VII as a result of the sexually hostile work environment and *quid pro quo* sexual harassment by Schroder.

31. As a direct result of the sexually hostile work environment, Plaintiff has suffered mental and emotional distress, pain and suffering, anger, depression, anxiety, humiliation and embarrassment, lost wages, and the value of lost benefits.

32. The actions of Defendants were done in reckless indifference to Plaintiff's federally protected rights and Plaintiff is therefore entitled to recover punitive and exemplary damages.

## COUNT TWO

**(Violation of Title VII - Retaliation)**

33. Plaintiff realleges the allegations of Paragraphs 1-32 as if fully set forth herein.

34. Defendants have retaliated against Plaintiff due to her making an internal report of sexual harassment and due to her filing a charge of sex discrimination and retaliation with the EEOC. The acts of retaliation include, but are not limited to: reassigning her from her position in which she was scheduled to give ground instruction as part of the MCC Training in May 2012 which resulted in a decrease in pay, by forcing her to move

from a company-provided apartment she had just moved into in October 2011, by putting her on a three week paid "holiday" leave, by taking away the office where she worked, by offering her an Employment Separation Agreement, Waiver and Release on January 9, 2012, by obtaining and reviewing her private medical records, by requesting Plaintiff to take a drug test when Defendants had no reasonable basis for requesting said drug test and by terminating Plaintiff's employment.

35. That as a direct and proximate result of the retaliatory action of Defendants, Plaintiff was terminated from her employment less than thirty days after filing her charge of discrimination and retaliation with the EEOC.

36. As a direct result of the retaliatory actions by Defendants, Plaintiff has suffered mental and emotional distress, pain and suffering, anger, depression, anxiety, humiliation and embarrassment. As a further direct result of the retaliatory actions by Defendants, Plaintiff has suffered lost wages and the value of lost benefits.

37. The actions of Defendants were done in reckless indifference to Plaintiff's federally protected rights and Plaintiff is therefore entitled to recover punitive and exemplary damages.

**COUNT THREE**

**(Invasion of Privacy)**

38. Plaintiff realleges the allegations of Paragraphs 1-37 as if fully set forth herein.

39. Plaintiff's medical records maintained by the FAA contain protected private and confidential health information.

10

40. Defendants' agents gained access to Plaintiff's confidential medical records, without obtaining Plaintiff's release for authorization to do so, which constitutes an invasion of her privacy

41. Plaintiff did not at any time provide an authorization to Defendants or any other employee or supervisor within her immediate work area, to gain access to her confidential health information.

42. Defendants, acting by and through its agents and employees, knew that it should not access Plaintiff's protected health information without Plaintiff's consent.

43. Defendants' success in accessing Plaintiff's private health information was done knowingly and maliciously, with an evil mind and an evil heart, with the intent of gaining confidential information to be used against Plaintiff for the purpose of disciplinary action, and Plaintiff is thereby entitled to general, compensatory and punitive damages.

WHEREFORE, Plaintiff demands judgment against Defendants, and each of them, as follows:

1. Declaring the acts and practices complained of herein are in violation of Title VII;

2. Compensatory and Special damages to be proven at time of trial;

3. Punitive damages pursuant to Title VII;

4. Prejudgment and post-judgment interest;

5. Attorneys' fees and costs of suit as provided by §706(k) of Title VII, 42 U.S.C. §2000e-6(k); and

11

6. For such other relief this Court deems just.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a jury trial.

DATED this 2nd day of March, 2012.

                            SCHLEIER LAW OFFICES, P.C.

                            /s/Tod F. Schleier
                            Attorney for Plaintiff